**TUSCARORA WAYNE MUTUAL INSURANCE COMPANY,**
Appellant

v.

Robert **KADLUBOSKY**, City Wide Towing and Repair and Corrine Mrochko, Individually and as Parent and Natural Guardian of Nicole Marah, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 12, 2004.

Filed Dec. 6, 2005.

James W. Gicking, Philadelphia, for appellant.

Brian W. Walsh, Kingston, for Mrochko, for appellee.

Before: FORD ELLIOTT, JOYCE and BECK, JJ.

OPINION BY JOYCE, J.:

¶ 1 In this declaratory judgment action, Appellant, Tuscarora Wayne Mutual Insurance Company, appeals from the September 29, 2003 order entered in the Court of Common Pleas of Luzerne County which denied its motion for summary judgment and granted the motion for summary judgment filed by Appellee, Corrine Mrochko, individually, and as parent and natural guardian of Nicole Marah. Upon review, we reverse. The relevant facts and procedural history are as follows.

¶ 2 On February 12, 2002, Appellee commenced the underlying action against Robert Kadlubosky ("Kadlubosky") and City Wide Towing and Repair ("City Wide") arising out of a dog bite incident on April 12, 2001. In that action, Appellee alleged that Kadlubosky and City Wide failed to properly restrain two dogs which attacked and injured Nicole Marah on a sidewalk/roadway near their property located at New Frederick Street in Wilkes–Barre, Pennsylvania. Specifically, Appellee alleged the following:

5. On April 12, 2001, at approximately 2:40 p.m., the minor Plaintiff was walking on the aforesaid New Frederick Street in Wilkes–Barre, Pa when she suddenly and without warning or provocation was attacked by the two Rottweiler dogs of the Defendant, Kadlubosky who were running loose on or about New Frederick Street after escaping from the Defendant, Kadlubosky's property.

8. The carelessness and negligence of the Defendant, at the time and place of aforesaid consisted of the following:

a. in leaving the aforesaid animals unattended so that they were free to attack people such as they did the minor Plaintiff; and

b. in failing to keep the aforesaid animals under a leash or similar restraint; and

c. in failing to keep the aforesaid animals confined to his own yard at his home or a doghouse; and

d. in keeping the dogs in an area where the Defendant or in the exercise of reasonable care should have known that children were likely to come in contact with said animals;

e. in leaving the dogs unsupervised in an area where the Defendant knew or in the exercise of reasonable care should have known that children may encounter said animals;

f. in failing to recognize that the aforesaid animals possessed dangerous propensities and were likely to attack children who were in the general area where the dogs were tethered;

g. in failing to properly supervise the actions of the dogs;

h. in violating the ordinances of the City of Wilkes–Barre by confining dogs on City property which was utilized by children;

i. in failing to warn members of the public including the minor Plaintiff of the dogs' vicious propensities and likelihood that the animals would attack individuals in the vicinity;

j. in violating the dog laws of the Commonwealth of Pennsylvania.

\* \* \* \* \* \*

10. At all times material hereto, the animals, namely the two Rotweiler dogs, were maintained by the Defendant Kadlubosky both for his personal pleasure, as well as, as watchdogs for various properties owned by the Defendant Kadlubosky including properties located at 313 McLean Street and at 41 Frederick Street.

11. At the time of the aforesaid incident, the Rotweiler dogs were being used in furtherance of the business of the Defendant, Kadlubosky.

\* \* \* \* \* \*

21. At all times material hereto, the said dogs were kept on the premises of the Defendant, City Wide Towing & Repair at 313 McLean Street in Wilkes–Barre, Pa. as watch dogs to look out for intruders.

Complaint, 2/12/02, Certified Record at 1, Exhibit B.

¶ 3 On April 12, 2002, Appellant initiated the instant action by filing a complaint for declaratory judgment. Within its complaint, Appellant sought a judicial declaration that it had no duty to defend or indemnify Kadlubosky and City Wide in the related action. Specifically, Appellant averred that the insurance policy at issue only covered Kadlubosky's property located at 313 McLean Street, Wilkes–Barre, Pennsylvania and not Kadlubosky's City Wide business, located on New Frederick Street, where the dogs escaped and subsequently attacked Nicole Marah. Furthermore, Appellant alleged that City Wide was not an insured under the policy at issue.

¶ 4 On June 26, 2003, Appellant filed a motion for summary judgment contending it was not required to indemnify Kadlubosky or City Wide in the underlying action. On July 10, 2003, Appellee filed a cross motion for summary judgment. Within her motion, Appellee requested that the trial court direct Appellant to provide a defense to and indemnify Kadlubosky in the related action.

¶ 5 On September 18, 2003, the trial court denied Appellee's motion for summary judgment and granted Appellant's motion for summary judgment. On September 29, 2003, the trial court *sua sponte*

vacated its September 18th order and granted Appellee's motion for summary judgment and denied Appellant's motion for summary judgment.

¶ 6 Appellant filed a timely appeal and on January 11, 2005, this Court remanded the case to the trial court with directions to prepare and file a Pa.R.A.P.1925(a) opinion. The trial court subsequently filed its opinion and this appeal is now ripe for review.

¶ 7 On appeal, Appellant raises the following issues for review:

1. Did the trial court err as a matter of law or abuse its discretion in granting summary judgment to [Appellee], holding that [Appellant] had a duty to defend and indemnify [Robert Kadlubosky and City Wide Towing & Repair] for off-premises injuries to a third party caused by guard dogs that had escaped from an enclosure on a remote, uninsured property/business?

2. Did the trial court err as a matter of law or abuse its discretion if it accepted [Appellee's] argument that policy language limiting coverage to injuries "arising out of ... ownership, maintenance or use of" a residential rental property was ambiguous, and would provide coverage for injuries caused by guard dogs that had escaped from a remote, uninsured property involved in a separate towing business?

3. Did the trial court err as a matter of law or abuse its discretion if it accepted [Appellee's] argument that coverage applied for off-premises injuries to a third party by guard dogs escaping from uninsured property, because the dogs had on another occasion been taken to the insured's residential property?

Brief for Appellant at 4.

¶ 8 In essence, Appellant's issues involve the trial court's interpretation of the policy's coverage provision and whether the provision is ambiguous.

> Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Capek v. Devito,* 564 Pa. 267, 767 A.2d 1047, 1048, n. 1 (2001). As with all questions of law, our review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

*Murphy v. Duquesne University,* 565 Pa. 571, 777 A.2d 418, 429 (2001).

> [W]e apply the same standard as the trial court, reviewing all of the evidence of record to determine whether there exists a genuine issue of material fact. In the absence of a factual dispute, we must discern whether the moving party is entitled to judgment as a matter of law.

* * * * * *

 Interpretation of a contract ... poses a question of law. In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.

*State Farm Fire and Cas. Co. v. Mac-Donald,* 850 A.2d 707, 709 (Pa.Super.2004), *quoting Stein Revocable Trust v. Gen. Felt. Indus., Inc.,* 749 A.2d 978, 980 (Pa.Super.2000).

 ¶ 9 Appellant asserts that the incident, which occurred off the insured property and near another unrelated property owned by Kadlubosky, is not covered under the unambiguous terms of Kadlubosky's insurance policy. Further, Appellant

contends there is no causal connection between the dog incident and the ownership or operation of the insured property. Therefore, Appellant concludes that the underlying action did not arise out of the ownership, maintenance or use of the insured property and, accordingly, it is not obligated to defend and indemnify Kadlubosky or City Wide in the underlying action.

The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint. It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.

Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

*Erie Ins. Exchange v. Muff*, 851 A.2d 919, 926 (Pa.Super.2004), *quoting Aetna Cas. And Sur. Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94, 98–99 (1994), *quoting D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) (internal emphasis, citations and quotation marks omitted).

¶ 10 We begin our analysis by reviewing the relevant portions of the insurance policy to ascertain the scope of insurance coverage. The pertinent portions provides:

LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART **SCHEDULE**

Premises: 313 McClean (sic) St., Wilkes Barre, Luzerne Co, Pa.

\* \* \* \* \* \*

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Insurance Policy, Certified Record at 1, Exhibit A.

¶ 11 According to the policy language, Nicole Marah's injuries must have arisen out of Kadlubosky's ownership, maintenance or use of the McLean property and operations necessary or incidental thereto in order to obligate Appellant to provide coverage. However, nowhere in the endorsement or insurance policy are the phrases "ownership, maintenance or use of the premises" or "operations necessary or incidental to those premises" defined. In interpreting these phrases, we are guided by the following principles:

When interpreting an insurance contract, words that are clear and unambiguous must be given their plain and ordinary meaning. Where ambiguities are found, they must be construed in the light most favorable to the insured. However, a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction. An ambiguity exists only

when a policy provision is reasonably susceptible of more than one meaning. Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them.

*State Farm,* 850 A.2d at 710–11, *citing Tenos v. State Farm Ins. Co.,* 716 A.2d 626, 628–29 (Pa.Super.1998) (quotations marks omitted). In applying the foregoing principles, we conclude that the phrases "ownership, maintenance or use of the premises" or "operations necessary or incidental to those premises" are clear and unambiguous on their face and, moreover, not reasonably susceptible to more then one meaning in their given context. *State Farm, supra.* Additionally, we disagree with the trial court's reasoning that the phrases are ambiguous for not incorporating the term "exclusive" in describing the above-cited phrases. Accordingly, we agree with Appellant and find the trial court erred in finding these phrases ambiguous.[1] As such, we now turn to the relevant allegations in the underlying complaint to determine whether the claims against Kadlubosky fall within the ambits of the policy.

¶ 12 The crux of Appellee's underlying complaint is that Kadlubosky failed to restrain the two dogs that escaped from his property and subsequently attacked Appellee on New Frederick Street. In its 1925 opinion, the trial court concluded that the incident arose out of the use and operations of the McLean property because "[b]ut for Defendant Kadlubosky purchasing the Rottweilers for his protection as well as for the protection of his property at 313 McLean Street, the attack would not

have occurred." *Id.* at 4. In support, the trial court stressed that the two dogs accompanied Kadlubosky to all of his properties, including the McLean property where he had resided at the time of the incident, and although Kadlubosky may have slept over at his New Frederick property, it had no plumbing, etc. *Id.* Further, the trial court pointed to the fact that the incident took place on a public roadway.

¶ 13 Upon our review of the certified record and accompanying briefs, we acknowledge the following undisputed facts. First, the insurance policy was issued for the premises located at 313 McLean Street and the policy describes the premises as a "tenant occupied dwelling". This policy does not contain an animal/dog bite exclusion. Furthermore, the residence located on 313 McLean Street is a two-story house divided into two separate apartments. Second, Appellee was attacked by Kadlubosky's two dogs that escaped from his property located on New Frederick Street. That property is used for Kadlubosky's City Wide towing yard. Significantly, the property is not listed in the policy as an insured property. Third, Kadlubosky also owned a third property, located at 309–311 McLean Street, and this property was used for his auto repair business. Finally, although Kadlubosky purchased the dogs as pets and for the protection of his property, he acknowledged during his deposition that he would utilize the dogs at the New Frederick property for security and his own protection. Moreover, the New Frederick property contained a dog pen where the dogs were kept on numerous occasions.

---

1. In arriving at its decision, the trial opined that the policy's coverage area was not limited to the McLean property, nor did the policy indicate an incident must arise out of the "exclusive" ownership, maintenance or use or operations necessary or incidental to the property. Trial Court Opinion, 2/11/05, at 5.

Therefore, the trial court concluded that reasonable minds could differ on whether those phrases "include the subject matter of the underlying action". As discussed *infra,* however, the policy specifically limited coverage to the McLean address.

¶ 14 Mindful of our standard of review, together with the foregoing undisputed facts, we conclude the trial court erred in requiring Appellant to defend and indemnify Kadlubosky and City Wide in the underlying action. As noted by the trial court, where a policy contains "arising out of" language, a court considers whether there is a causal connection between the property and underlying incident. In fact, "construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by." *Roman Mosaic & Tile v. Aetna Cas. and Sur.*, 704 A.2d 665, 669 (Pa.Super.1997), *quoting Erie Ins. Exchange v. Eisenhuth*, 305 Pa.Super. 571, 574, 451 A.2d 1024, 1025 (1982), *citing Manufacturers Casualty Ins. Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961). "The phrase 'arising out of' has been equated with 'but for' causation." *Id.* We find, however, no causal connection between Kadlubosky's ownership, maintenance, or use of the insured property, a tenant occupied dwelling, and the escape of two dogs from his towing business, a property not covered under the insurance policy, and the subsequent attack on Appellee.

¶ 15 Although Kadlubosky may have resided at 313 McLean Street and the dogs, on occasion, would accompany him to 313 McLean and either stay there or in a garage located on adjacent property at 309–311 McLean Street, we do not find these facts dispositive to our issue. Assuming, *arguendo*, Kadlubosky used the dogs for his protection and they would sporadically stay at 313 McLean, we find no causal connection between those factors and the fact that the underlying incident arose out of the dogs escaping from Kadlubosky's towing business where, at the time of the incident, they were used for security at the business. Importantly, we are not faced with a situation where dogs escaped from an insured property and thereafter attacked a child while off premises. Rather, the case *sub judice* involves two dogs escaping from a property not covered under the policy and, importantly, not arising out of the ownership, maintenance or use of the insured property or operations necessary or incidental thereto.

¶ 16 Finally, we note that the trial concluded the policy's coverage area was not limited to the McLean property, but instead incorporated a coverage area "as the United States of America including its territories and possessions." Trial Court Opinion, 2/11/05, at 4. In support, the trial court cites to the "coverage territory" definition within the policy, along with the section describing coverage where injury/damage is caused by an occurrence taking place in the coverage territory. *Id.* at 3–4, 170 A.2d 571. We find this argument far reaching and tenuous, at best. As the insurance endorsement clearly limits coverage to 313 McLean Street, we are not persuaded that Kadlubosky and Appellant contemplated coverage to extend anywhere within the United States and we refuse to interpret it as such.

¶ 17 Order reversed. Jurisdiction relinquished.